UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GUI LIN HU,

Petitioner,

v.

TODD BLANCHE, et al.,

Respondents.

Case No. 5:26-cv-06390-KES

ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY

## I. INTRODUCTION

Gui Lin Hu ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging his detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents answered the Petition ("Answer" at Dkt. 10), and Petitioner replied ("Reply" at Dkt. 11). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 9.)

The Petition is granted in part, because the immigration judge ("IJ") abused his discretion in finding that Petitioner was a flight risk. Because the record reveals no valid purpose for detaining Petitioner, Respondents are directed to

immediately release him from custody.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. <u>Entry into the U.S. on a Visa and Affirmative Asylum Application (Feb.-July 2026).</u>

Petitioner is a citizen of China. (Pet. Ex. B / Dkt. 1-2 at 56 (Petitioner's Chinese passport).) On February 27, 2026, he entered the U.S. as a non-immigrant visitor for pleasure with authorization to remain in the U.S. through August 26, 2026. (Pet. at 19, ¶ 50; Pet. Ex. B / Dkt. 1-2 at 7 (DHS Form I-213).)

On June 7, 2026, Petitioner was baptized as a Christian at a church in California. (Pet. at 19, ¶ 51.) On July 27, 2026, he filed an application for asylum and withholding of removal with U.S. Citizenship and Immigration Services ("USCIS"), alleging fear of persecution based on his political beliefs and his conversion to Christianity. (Pet. at 19, ¶ 52; <u>see also</u> Pet. Ex. B / Dkt. 1-2 at 44 (USCIS Form I-589, the asylum application).) He has no criminal history. (Pet. Ex. B / Dkt. 1-2 at 7 (DHS Form I-213).)

### B. <u>Arrest by ICE and Beginning of Removal Proceedings (Sept. 1, 2026).</u>

USCIS scheduled Petitioner for a biometrics appointment on September 1, 2026, which is a routine part of the background-check process for individuals seeking asylum in the U.S. (Pet. at 20, ¶ 53.) Petitioner appeared at that appointment and was arrested by ICE. (Pet. at 20, ¶ 54; Pet. Ex. B / Dkt. 1-2 at 7 (DHS Form I-213).)

Petitioner was served with a notice to appear ("NTA") charging him as removable under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). (Pet. Ex. C / Dkt. 1-3 (the NTA).) The NTA stated that Petitioner was authorized to remain in the U.S. "for a temporary period not to exceed August 26, 2026" but that Petitioner remained in the U.S. beyond that date "without authorization." (<u>Id.</u>)

### C. Bond Hearing (Sept. 15, 2026).

#### 1. Evidence Submitted to the IJ.

On September 15, 2026, Petitioner had a bond hearing before IJ Patrick Barrett. (Pet. at 20, ¶ 55.) Petitioner filed a proposed witness list, which included Petitioner himself and his proposed sponsor, Richard Y. Chang. (Pet. Ex. B / Dkt. 1-2 at 10.) The witness list described Petitioner's sponsor and his expected testimony as follows: "U.S. Citizen who is the deacon of [Petitioner's] church. Understands his responsibilities as [Petitioner's] financial sponsor and will ensure that [Petitioner] complies with all immigration orders." (Id.) The exhibits he submitted to the IJ included evidence of Mr. Chang's citizenship, finances, and home ownership. (Id. at 13-25.)

Petitioner also submitted a letter signed under penalty of perjury by Mr. Chang and two other elders of his church. (Pet. Ex. B / Dkt. 1-2 at 178-79.) The letter stated, "If [Petitioner] is granted release from detention while his asylum case is pending, our church community is fully prepared to welcome him and offer supportive care, including tangible support, guidance, emergency shelter, transportation to court hearings, or whatever necessary for his care." (Id. at 178.)

Petitioner further submitted a copy of his pending asylum application, which seeks relief based on religious and political persecution. (Id. at 44, 48.) The application stated:

> On February 21, 2026, [three] individuals who asserted that they were from my local Guobao (Domestic Security Department) forcibly entered by home and ordered me to go with them. They took me to the Dongqu Police Station where I was confined to an interrogation room and questioned for approximately 44 hours. I was deprived of sleep, my food and water intake was severely restricted, my phone was confiscated and searched, and I was subjected to psychological abuse.

(Id. at 48.) He also described his baptism in the U.S. and the activities with his Christian church, which include "worship[ing] every Sunday from 10am to 12pm," "Saturday group meetings from 10am until 12pm followed by lunch," and "Monday through Friday … evening revival meetings to study the Bible over Zoom." (Id. at 49.)

### 2. Argument at the Hearing.

Respondents have lodged an audio recording of the bond hearing (Dkt. 8), which this Court has reviewed. Petitioner was present with counsel and a Mandarin interpreter. (Bond Hearing Audio 1:00-3:15.) Four members of Petitioner's church, including his proposed sponsor, were also present at the hearing. (Id. at 4:00-4:50.) The IJ acknowledged and admitted Petitioner's exhibits. (Id. at 1:00-3:15.)

DHS did not assert that Petitioner was a danger to the community; the only issue discussed was flight risk. Petitioner's counsel argued that the record showed he was likely to appear for future immigration hearings because he entered the U.S. lawfully, sought asylum before his visitor visa expired, and voluntarily appeared for his asylum-related biometrics appointment, even though he knew that he might be detained by ICE. (Id. at 3:15-4:00.) Counsel argued that the letter from his church elders provided a "concrete release plan," and that the proposed sponsor had the financial means to aid Petitioner as needed. (Id. at 4:00-4:50.)

DHS argued that Petitioner had: "minimal" residence in the U.S. of about six months (id. at 5:20-5:30); "insufficient evidence" of a fixed address, since he had not submitted a lease or utility bill (id. at 5:30-40); "minimal community ties" because he had only been in the U.S. for six months (id. at 5:35-45); no established work history in the U.S. and no proof of employment authorization from USCIS (id. at 5:45-55); and no letter, statement, or agreement from his sponsor promising or ensuring that Petitioner would appear for future immigration hearings (id. at 6:30-40). DHS argued that Petitioner was single and had no children in the U.S.,

which meant he had "no one to apply for relief from removal," and his only possible grant of removal relief was "speculative at this stage." (Id. at 6:00-6:12.) DHS further argued that Petitioner was "a visa overstay in complete disregard of our immigration laws," arguing that when he entered on the visitor visa he had "no intent of returning" to China. (Id. at 6:50-7:05.)

Petitioner's counsel responded by pointing the IJ to the letter signed by his sponsor and two elders of his church and offering to have the sponsor, who was present, testify before the IJ. (Id. at 7:10-40.) Counsel objected that it was "speculative" to say that Petitioner entered the U.S. with an intent to remain, because he did not apply for asylum until five months after his arrival and after his baptism. (Id. at 8:00-8:10.)

**3. IJ's Oral and Written Ruling.**

The IJ did not hear any live testimony. After counsel's arguments concluded, he announced that Petitioner had not met his burden to establish that he is not a flight risk. (Id. at 8:30-9:00; see also Pet. Ex. B / Dkt. 1-2 (IJ's bond order dated 9/15/26).) The IJ cited the fact that Petitioner had been in the U.S. for less than a year and opined that the immigration relief he could seek was "limited" and "speculative in nature." (Bond Hearing Audio at 8:30-9:00.)

Petitioner appealed the bond order to the Board of Immigration Appeals. ("BIA"). (Pet. Ex. A / Dkt. 1-1 at 1.) On October 28, 2026, in response to that appeal, the IJ issued a more detailed bond memorandum explaining his decision. (Id.) That order reasoned as follows:

> The Court determined that [Petitioner] does pose a high risk of flight which could not be mitigated with any bond amount. …
>
> The Court first considered relevant factors that elevate [Petitioner's] risk of flight. [Petitioner] was most recently admitted into the United States with an B2 visa on or about February 27, 2026. Ex. 3 at 5. He was permitted to remain in the United States for a

period not to exceed July 27, 2026. Id.[[1]] However, [Petitioner] failed to depart the United States by July 27, 2026, as required, and remained in the United States without authorization from the relevant immigration authorities. Id. To the extent that [Petitioner] violated the terms of his B2 visa by overstaying his period of authorized stay, the Court considers this as a negative factor *vis a vis* his risk of flight, insofar as it demonstrates a willingness to violate the immigration laws and regulations of the United States. See Matter of Guerra, 24 I&N Dec. at 40 (noting that an alien's "history of immigration violations" is a proper flight risk factor). Matter of R-A-V-P-, 27 I&N Dec. 803, 805 (BIA 2020) (considering factors that elevated [the noncitizen's] risk of flight). Additionally, [Petitioner] has resided in the United States for less than a year, which is an extremely short amount of time. He also has limited ties to the United States. There is no indication that he has any family ties to the United States or an employment history in the country.

Finally, [Petitioner] has limited avenues to lawfully remain in the United States. [Petitioner] is only eligible to seek asylum, withholding of removal under the INA, and protection under the Convention Against Torture and he currently has a Form I-589 pending with USCIS. Ex. 1 at 10-26.[[2]] A favorable outcome on this application is by no means certain. See Matter of R-A-V-P-, 27 I&N

[1] IJ Exhibit 3 was Petitioner's DHS Form I-213. The cited page stated that Petitioner had "authorization to remain in the United States for a period not to exceed August 26, 2026," and that Petitioner filed an asylum application on July 27, 2026. (Pet. Ex. B / Dkt. 1-2 at 7.) Thus, the IJ made a mistake of fact.

[2] IJ Exhibit 1, pages 10-26, was Petitioner's asylum application and related documents acknowledging receipt. (Pet. Ex. B / Dkt. 1-2 at 39-55.)

Dec. at 806 (explaining that "for various reasons, eligibility for asylum can be difficult to establish," and even for noncitizens "who are found to have a credible fear, a grant of asylum is uncertain, in part because the legal standard for establishing eligibility for asylum is higher'); see also, e.g., Garcia v. Wilkinson, 988 F.3d 1136, 1146 (9th Cir. 2021) (explaining that "the overall standard of proof [for withholding] is more difficult to meet" than the standard for asylum); Hernandez v. Garland, 52 F.4th 757, 769 (9th Cir. 2022) ("The [CAT] regulations place a heavy burden on the applicant: Demonstrating torture requires a much greater showing of harm than demonstrating persecution, itself 'an extreme concept.'" (quoting Sharma v. Garland, 9 F.4th 1052, 1060 (9th Cir. 2021))). "A [noncitizen] with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief." Matter of Andrade, 19 I&N Dec. 488, 490 (BIA 1988). The Court determined that [Petitioner's] limited prospects for relief and the speculative "likelihood that relief from removal will be granted" substantially increase his flight risk because he has little incentive to appear for any future immigration proceeding or for removal. See Matter of R-A-V-P-, 27 I&N Dec. at 805; see also Rodriguez Diaz [v. Garland], 53 F.4th 1189, 1208 (9th Cir. 2022) ("The risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent.").

The Court also considered relevant factors that mitigate [Petitioner's] risk of flight. Mr. Richard Chang, who is a United States citizen, has agreed to be [Petitioner's] sponsor as well as two

> other elders at [Petitioner's] church. Ex. 1 at 149-150.[[3]] He stated that the entire church community is prepared to provide [Petitioner] with tangible support including guidance, emergency shelter, transportation, and whatever else is necessary for his care. Id. at 149. [Petitioner] also has a residence in Monterey Park, California. Id. at 15.[[4]] However, the Court was not persuaded that [Petitioner] would comply with any requirements of his release given his recent entry, minimal ties to the United States, and limited and speculative relief. Thus, the Court was not persuaded that these positive factors were sufficient to mitigate [Petitioner's] high risk of flight in the future.
>
> In sum, the Court found the record showed that [Petitioner] poses such a high flight risk that no amount of bond or combination of conditions could mitigate that risk. … Accordingly, after considering the totality of the evidence, the Court concluded [Petitioner] did not meet his burden to establish that his release would not pose such a significant flight risk that no amount of bond would be appropriate.

(Id. at 2-4.)

**D. Current Status of Immigration Proceedings and Detention.**

Petitioner's removal case remains pending with an individual hearing currently scheduled for January 5, 2027. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 242-520-891 (China), last accessed Nov. 12, 2026). He remains in ICE

---

[3] IJ's Exhibit 1, pages 149-50, was the letter from Petitioner's church elders. (Pet. Ex. B / Dkt. 1-2 at 178-79.)

[4] IJ's Exhibit 1, page 15, is Petitioner's asylum application, which listed a home address in Monterey Park, California. (Pet. Ex. B / Dkt. 1-2 at 44.)

custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 242-520-891 (China), last accessed Nov. 12, 2026). He has now been in detention for more than two months.

**E. Habeas Proceedings.**

The present Petition, filed on October 28, 2026, raises the following claims:

Ground 1: Petitioner's detention violates his substantive due process rights because he is not a flight risk or danger to the community. (Pet. at 25-28, ¶¶ 67-75.)

Ground 2(a): Respondents violated Petitioner's procedural due process rights because the IJ's written bond order "states a conclusion without analysis" and "said [the IJ] would 'provide a memorandum' pursuant to the Immigration Court Practice Manual only if [Petitioner] appealed his decision." (Pet. at 30, ¶¶ 80-81).

Ground 2(b): Respondents violated Petitioner's procedural due process rights because the IJ "did not engage with the evidence" and did "not address any of the Guerra factors[5] that weigh in [Petitioner's] favor," such as "his lawful entry," "the absence of any immigration violates," "his timely asylum filing," "his abstention from unauthorized employment," "his U.S. citizen sponsor," "his church community's support," and "his lack of any criminal history." (Pet. at 31, ¶ 82 (citing Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024)).) This failure means that Petitioner has been detained "without a reasoned, individualized custody determination," which violates his procedural due process rights. (Pet. at 32, ¶ 84.)

Ground 2(c): The IJ "was not neutral" because there are "institutional pressures on IJs to deny release," and a federal district court previously found "that this same IJ conducted constitutionally inadequate bond hearings." (Pet. at 32, ¶ 84; see also id. at 21-25, ¶¶ 60-66; Pet. Ex. D / Dkt. 1-4 (affidavit of Lawrence O.

---

[5] In re Guerra, 24 I&N Dec. 37 (BIA 2006).

Burman, a former IJ)); Uriarte Villa v. Mullin, 834 F. Supp. 3d 957 (C.D. Cal. 2026) (granting release from custody after bond hearing was ordered, finding IJ Patrick Barrett abused his discretion in finding the petitioner a flight risk). This means Petitioner has not had a bond hearing before "a neutral adjudicator," which violates his procedural due process rights. (Pet. at 32, ¶ 85.)

Ground 3: Respondents violated the Administrative Procedure Act ("APA") because the "IJ's denial of [Petitioner's] request for release on bond [was] arbitrary, capricious, and an abuse of discretion…." (Pet. at 32-35, ¶¶ 86-94.)

Petitioner primarily seeks release from custody, arguing that "ordering a second § 1226(a) bond hearing" in immigration court "would not properly address the statutory and constitutional violations present in this matter." (Pet. at 36.) Alternatively, he seeks a bond hearing before this Court or a "§ 1226(a) bond hearing before a different IJ … with additional safeguards," such as requiring DHS to bear the burden of proof by clear and convincing evidence. (Id. at 36-37.)

Respondents answered the Petition on November 4, 2026. (Dkt. 10.) First, they argue that "Petitioner must exhaust his administrative remedies" by awaiting the BIA's ruling on Petitioner's pending appeal of the IJ's bond order. (Id. at 2-3.) Second, they argue that Petitioner is asking this Court to decide "whether the IJ correctly weighed the evidence in applying the bond factors," which "is an exercise of discretion beyond the Court's jurisdiction to review." (Id. at 4-5.) Third, they argue that "Petitioner cites no authority that … IJs must discuss every single piece of evidence." (Id. at 4.) Fourth, they argue that this Court can consider both the IJ's written orders and his oral rulings at the bond hearing, which together explain why the IJ denied bond. (Id. at 6.)

Petitioner replied on November 9, 2026. (Dkt. 11.) He argues that exhaustion should be excused because (a) the "custody record is complete," (b) "the questions presented—whether the IJ applied the correct legal standard and whether the hearing satisfied due process—require no further agency fact-finding,"

and (c) Petitioner "suffers irreparable injury every day he waits" in immigration custody. (Id. at 3.) He argues that his challenge to the IJ's findings is proper because it "concerns whether the IJ applied the government standard through an individualized assessment and whether the omission of highly probative evidence renders the decision legally deficient." (Id. at 4.) He argues that the "IJ's reasoning would deny bond to virtually every lawful asylum applicant," and that the IJ's decision "contains no assessment of the strength of [Petitioner's asylum] claims based on his political opinion and his conversion to Christianity…." (Id. at 5-6.)

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies is Waived.

#### 1. Legal Standard.

For habeas petitions properly filed under 28 U.S.C. § 2241, like the present Petition, the exhaustion requirement is prudential, rather than jurisdictional. Where a noncitizen denied bond under § 1226(a) does not exhaust his administrative remedies by appealing to the BIA, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011).

Courts deciding whether to excuse prudential exhaustion generally consider what are known as the Puga factors, which consider whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Puga v.

Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)).

"Nonetheless, even if the three Puga factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Hernandez, 872 F.3d at 988 (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

**2. Analysis.**

At least one of the Puga factors weighs against requiring prudential exhaustion in this case. Under the first Puga factor, this Court has a complete record of the proceedings, including audio of the bond hearing and a written decision from the IJ explaining his reasoning. Compare Martinez v. Scott, No. 25-cv-1538, 2025 WL 2689844, 2025 U.S. Dist. LEXIS 186226 (W.D. Wash. Aug. 27, 2025) (declining to excuse exhaustion where the IJ had not issued a written decision explaining why the IJ denied bond), report & recommendation adopted, 2025 WL 2689066, 2025 U.S. Dist. LEXIS 184653 (W.D. Wash. Sept. 19, 2025). Respondents have not explained what other aspects of the record would be developed in the BIA appeal.

Furthermore, Petitioner would suffer irreparable harm if forced to wait for the BIA to render a decision on his appeal, which is likely to take at least six months. See Gonzalez Reyes v. Rios, No. 26-cv-3830-JGB-DFM, 2026 WL 2190830, at *2, 2026 U.S. Dist. LEXIS 168799, at *7 (C.D. Cal. July 28, 2026) ("'In 2024, the EOIR data showed an average processing time of 204 days for bond appeals.' Rodriguez v. Bostock, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025). And that number has likely only increased since 2024 given the BIA's increased workload and its inability to 'keep up with incoming filings while tackling the backlog in any meaningful way.' Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267, 5270 (Feb. 6, 2026)."); see also

Hernandez, 872 F.3d at 995 (describing "the irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment)").

Accordingly, the administrative exhaustion requirement is waived.

**B. Petitioner is Entitled to Relief on Ground 2(b), Because the IJ Abused His Discretion by Finding Petitioner is a Flight Risk.**

**1. Legal Standard.**

In deciding whether a noncitizen is a danger or flight risk, IJs consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024) (quoting In re Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). These are usually referred to as the "Guerra factors."

In Martinez, the Ninth Circuit held that the "application of the 'dangerousness' standard is a reviewable mixed question" of law and fact that federal courts can review, notwithstanding statutory limitations on judicial review. Id. at 783. The Ninth Circuit reasoned, "Even though what constitutes 'dangerousness' is malleable and involves agency discretion, … this is still a legal standard so long as federal courts can 'assess whether an IJ correctly applied the statutory standard to a given set of facts." Id. (quoting Wilkinson v. Garland, 601

U.S. 209 (2024)). Because IJs rely on the same Guerra factors to assess flight risk, district court generally interpret Martinez as allowing courts to review that finding under the same standard. See, e.g., Miri v. Bondi, No. 26-cv-00698-MEMF-MAR, 2026 WL 622302, at *5, 2026 U.S. Dist. LEXIS 46944, at *15 (C.D. Cal. Mar. 5, 2026).

A district court reviews an IJ's rulings on dangerousness or flight risk for an abuse of discretion. Martinez, 124 F.4th at 784 ("When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion."). "Abuse of discretion review 'is limited to whether the IJ's decision reflects clear legal error or is unsupported by sufficient evidence.'" Restrepo v. Noem, No. 26-cv-01735-AJR, 2026 WL 1047688, at *5, 2026 U.S. Dist. LEXIS 61209, at *13 (C.D. Cal. Mar. 23, 2026) (quoting C.A.R.V. v. Wofford, No. 25-cv-01395, 2026 WL 241823, at *3, 2026 U.S. Dist. LEXIS 17595, at *10 (E.D. Cal. Jan. 29, 2026)). The district court "cannot reweigh evidence" considered by the IJ or BIA, but "can [only] determine whether the [immigration court] applied the correct legal standard.'" Martinez, 124 F.4th at 785 (citation omitted). The Ninth Circuit further explained:

> Generally, in the absence of any red flags, we take the BIA at its word. For example, "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence," we will rely on the BIA's statement that it properly assessed the entire record. … We do not require the BIA to "discuss each piece of evidence submitted." … Similarly, we accept that the BIA "applied the correct legal standard" if the BIA "expressly cited and applied [the relevant caselaw] in rendering its decision." … But when there is an indication that something is amiss, like if the BIA "misstat[es] the record" or "fail[s] to mention highly probative or potentially dispositive evidence," we do not credit its use of a "catchall phrase"

to the contrary.

Martinez, 124 F.4th at 785 (citations omitted).

**2. Analysis.**

In the present case, the IJ gave five reasons for finding Petitioner a flight risk: (1) he "failed to depart the United States by July 27, 2026, as required," which "demonstrate[d] a willingness to violate the immigration laws and regulations of the United States"; (2) Petitioner has resided in the U.S. "for less than a year, which is an extremely short amount of time"; (3) Petitioner has "limited ties to the United States" because he has no "family ties"; (4) Petitioner has no "employment history in the country"; and (5) Petitioner has "limited avenues to lawfully remain" in the U.S. because he is "only eligible to seek asylum, withholding of removal under the INA, and protection under the Convention Against Torture," and "a favorable outcome on this application is by no means certain." (Pet. Ex. A / Dkt. 1-1 at 1.) At least four of these reasons rely on apparent mistakes of fact or irrational interpretations of the record that, together, demonstrate an abuse of discretion.

Regarding the first reason, the IJ misstated the date through which Petitioner was authorized to remain in the U.S. The IJ found that Petitioner was only entitled to remain through July 27, 2026, but the evidence before the IJ established that Petitioner's visa entitled him to remain in the U.S. through August 26, 2026. (Pet. Ex. B / Dkt. 1-2 at 7 (DHS Form I-213, which stated Petitioner authorized to remain in the United States "for a period not to exceed August 26, 2026"); id. at 34 (NTA, stating he had "authorization to remain in the United States for a temporary period not to exceed August 26, 2026").) This is material because the evidence also established that Petitioner submitted an asylum application to USCIS on July 27, 2026, i.e., about a month before his visa authorization expired. (Pet. Ex. B / Dkt. 1-2 at 7 (DHS Form I-213).) As Petitioner's counsel pointed out at the bond hearing, Petitioner overstayed his visa only *after* he had filed an affirmative asylum

application, and he then voluntarily appeared for a biometrics appointment related to that application. No rational factfinder could conclude that this demonstrated an unwillingness to follow U.S. immigration law. See, e.g., Ariel D.L. v. Warden, No. 26-cv-06973, 2026 WL 3228444, at *3, 2026 U.S. Dist. LEXIS 247102, at *7-8 (E.D. Cal. Oct. 28, 2026) ("[T]he allegation that Petitioner overstayed his visa is not sufficient to demonstrate that Petitioner is a flight risk. Firstly, the fact that Petitioner entered the country legally, under a valid visa, is a positive factor under Guerra factor 9. Secondly, the fact that the government alleges a person has violated immigration laws will be true in all removal proceedings and does not support a finding that the noncitizen is likely to flee."); Lu v. L.A. Field Dir., No. 26-cv-00575-JAK-SP, 2026 WL 1455320, at *12, 2026 U.S. Dist. LEXIS 114567, at *34-35 (C.D. Cal. Apr. 15, 2026) ("Under BIA precedent, Petitioner's current unlawful status and visa overstay 'bear little if any relevance to the issue of whether or not' Petitioner is likely to appear for removal proceedings. … . Indeed, Petitioner's 'prior lawful status' under a tourist visa reduces the risk of flight under Guerra.") (citation omitted); Shirley v. Scott, No. 26-cv-02980, 2026 WL 2833676, at *5, 2026 U.S. Dist. LEXIS 215296, at *13 (W.D. Wash. Sept. 22, 2026) ("[T]he fact petitioner overstayed her visa is not, in and of itself, sufficient to establish flight risk—otherwise, every individual detained for an immigration violation would be denied bond and there would be no reason to consider the Guerra factors at all.").

The IJ's third reason, Petitioner's lack of family or community ties, failed to account for the evidence from multiple members of Petitioner's church and Petitioner's own description of his ties to the church in his asylum application. Although the IJ's written decision acknowledged the church members' letter, the IJ did not explain why he was discounting those ties. See, e.g., Hagos v. Chestnut, No. 26-cv-04432, 2026 WL 3216365, at *6, 2026 U.S. Dist. LEXIS 245669, at *14 (E.D. Cal. Oct. 27, 2026) ("The IJ's explanation of Petitioner's flight risk is wholly

inconsistent with the credited sponsor evidence and cannot stand. 'When an IJ's decision is 'arbitrary, irrational, or contrary to law,' it is an abuse of discretion.'") (citation omitted).

The IJ's fourth reason, Petitioner's lack of work history in the U.S., was also irrational and unsupported by the record. For all but the last two months of Petitioner's time in the U.S. prior to his ICE detention—between February and July 2026—his presence was authorized by a visitor visa. This type of visa does not authorize the visa holder to work legally in the U.S. See generally 8 C.F.R. § 241.1(e)(1)-(2) ("A nonimmigrant in the United States in a class defined in section 101(a)(15)(B) of the Act as a temporary visitor for pleasure … may not engage in any employment…. Any unauthorized employment by a nonimmigrant constitutes a failure to maintain status…."). Although some asylum-seekers may seek work authorization from USCIS, there is no evidence that Petitioner was granted such authorization. When he was detained by ICE, only two months had passed since he had submitted his asylum application. His lack of employment history in this country thus further demonstrates his intent to follow the laws of the U.S.

The IJ's fifth reason, his conclusion that Petitioner was unlikely to succeed on his application for asylum and withholding of removal, was not supported by any specific evidence in the record. The IJ did not comment on or appear to rely on the specifics of Petitioner's asylum application, which is based on his conversion to Christianity and the well-known persecution of Christians in China. Rather, the IJ merely cited observations from other courts that, in general, the standards for granting asylum and withholding-of-removal relief are high. "While 'it might be rational' to conclude that a noncitizen who faces inevitable removal may be less likely to appear at future removal hearings, 'the IJ did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in [his] case.'" Rugama Perez v. Semaia, No. 26-

cv-05138-DFM, 2026 WL 2924454, at *8, 2026 U.S. Dist. LEXIS 222423, at *22 (C.D. Cal. Sept. 29, 2026) (quoting Soriano v. Hernandez, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026)). Accepting this reasoning for denying a noncitizen bond would essentially mean that anyone whose prospective path to legal residency is based on asylum or withholding of removal alone—no matter how meritorious such claims may be—should be detained while those claims are being adjudicated. This is not the type of individualized assessment required under § 1226(a) and the Guerra factors.

Ultimately, nearly all of the IJ's stated reasons for denying Petitioner release hinge on the IJ's second stated reason: that Petitioner had not been in the U.S. for very long when he was detained by ICE. Placing such high importance on this factor irrationally disfavors noncitizens like Petitioner, who comply with the one-year deadline for filing asylum applications, see 8 U.S.C. § 1158(a)(2)(B) and 8 C.F.R. § 208.4(a)(2), and are amenable to ICE enforcement action precisely because they voluntarily appear for their immigration appointments. In Petitioner's case, the IJ's finding that he was a flight risk—despite a lack criminal history, history of compliance with immigration authorities, and well-documented community ties to his church—was an abuse of discretion.

Accordingly, Petitioner is entitled to relief on Ground 2(b) of the Petition. The appropriate remedy is release from custody, as discussed further below.

**C. Petitioner is Entitled to Relief on Ground 1, Because His Current Detention Serves No Proper Purpose.**

Civil immigration detention has two legitimate purposes: ensuring the detainee's appearance at future immigration proceedings and protecting the community from danger. See generally Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017) ("The government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings, but any detention incidental to removal must 'bear[ ] [a] reasonable relation to [its]

purpose.'") (quoting Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). In the absence of evidence that the detainee is a flight risk or a danger, their "immigration detention does not bear a reasonable relation to the statutory purposes motivating it" and "violate[s] Petitioners' right to be free from impermissible government custody." Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025).

Granting habeas relief purely on this basis might be inappropriate where the government has had no opportunity to prove flight risk or danger in immigration court. However, where the record was fully developed at a bond hearing and yet reveals no valid justification for a noncitizen's continued detention, release from custody is the appropriate remedy. See, e.g., Shirley, 2026 WL 2833676, at *5, 2026 U.S. Dist. LEXIS 215296, at *14 ("Because Petitioner's bond hearing was legally and constitutionally inadequate, and the Court finds no adequate basis for her continued detention, the Court concludes that the 'typical remedy' of release is appropriate."); Soriano, 830 F. Supp. 3d at 1081 ("Federal courts have 'a fair amount of flexibility' in fashioning specific habeas relief. … Under the circumstances, the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy.") (citing Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005)); Lu, 2026 WL 1455320, at *14, 2026 U.S. Dist. LEXIS 114567, at *40-41 ("Because Respondents offer no lawful justification for Petitioner's continued detention -- and have not proffered any new evidence of dangerousness or flight risk not already considered at the March 30, 2026 bond hearing -- and the remaining equitable factors tip sharply in Petitioner's favor, the appropriate remedy for Petitioner's prolonged detention in violation of due process is release under reasonable conditions of supervision."); Ariel D.L., 2026 WL 3228444, at *5, 2026 U.S. Dist. LEXIS 247102, at *13-14 (granting release).

As discussed above, the only reasons the IJ cited to justify Petitioner's detention were irrational and unsupported by the record. In these proceedings,

Respondents do not point to any new evidence regarding flight risk or danger, or argue that a new hearing is necessary to further develop the record. Accordingly, release from custody is appropriate. The Court also finds that the prospective injunctive relief awarded below is necessary to protect against future violations of Petitioner's substantive due process rights.

**D. <u>The Other Claims Should Be Dismissed as Moot.</u>**

Because granting relief on Ground 2(b), as discussed above, grants all of the relief sought in the Petition, there is no further relief the Court can grant as to the other claims. Those claims are therefore dismissed as moot.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## IV. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Grounds 1 and 2(b) of the Petition are granted, and Grounds 2(a), 2(c), and 3 are dismissed as moot.
2. Respondents shall **immediately release** Gui Lin Hu (A# 242-520-891) from custody.
3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.
4. Respondents shall not re-detain Petitioner without providing him with a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[6]

DATED: November 13, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[6] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).